Fred D'AMATO, Plaintiff,

v.

The LONG ISLAND RAILROAD COMPANY, Defendant.

No. 91–CV–4507.

United States District Court, E.D. New York.

Jan. 19, 1995.

Scott L. Sherman, Sherman & Basichas, P.C., New York City, for plaintiff.

William J. Blumenschein, Long Island Rail Road, Jamaica, NY, for defendant.

## MEMORANDUM—DECISION AND ORDER

BARTELS, District Judge.

The defendant the Long Island Railroad Company (the "Railroad") moves this Court under Rule 59(a) of the Federal Rules of Civil Procedure for an order granting the Railroad a new trial on the ground that the damages awarded by the jury were excessive. As an alternative remedy, the Railroad asks for remittitur reducing the jury's award. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

In the early morning hours of March 15, 1991, plaintiff Fred D'Amato, while turning to avoid a spray of sparks from a passing train, tripped and fell over a piece of Railroad equipment which had been left on the side of the tracks in the Hempstead, Long Island Railroad Yard. At the time of his accident, D'Amato, who was employed by the Railroad as an assistant conductor, was in the process of throwing track switches in the Hempstead Yard to allow the train to which he was assigned to move out of service.

Following the accident, over a two and a half year period, D'Amato missed thirty-six weeks of work and underwent two ambulatory surgeries, one to release a compressed ulnar nerve, the other to relieve D'Amato's carpal tunnel syndrome. Although D'Amato returned to work in his former position, he complains of continued pain and clumsiness in his right hand, as well as pain in his elbow, back, and neck.

The case was tried before a jury on November 16, 17, 18, 21, 22, 23, 28, 29, and 30, 1994. In response to special interrogatories, the jury found that the Railroad was negligent; that its negligence was a proximate cause of D'Amato's injuries; and that D'Amato also was negligent, attributing 15% of the responsibility for the accident to D'Amato's own actions. It further found that D'Amato's injuries were permanent and awarded him damages of $800 for past out-of-pocket expenses; $25,000 for lost earnings; $75,000 for pain and suffering from the time of the accident until the date of the verdict; and $60,000 for future pain and suffering. Plaintiff's damages, $160,800, are reduced by 15% as required by the jury's finding of comparative negligence.

## DISCUSSION

On this motion, the Railroad contests the jury's verdict arguing solely that it is grossly excessive and should be set aside. Rule 59(a) of the Federal Rules of Civil Procedure vests with the district court the authority to set aside a verdict and order a new trial on all or part of the issues previously tried before a jury. Although the computation of damages is a fact-finding function within the province of the jury, the court may order a new trial where the jury's verdict is clearly excessive. *See Slade v. Whitco Corp.,* 811 F.Supp. 71, 74 (N.D.N.Y.), *aff'd,* 999 F.2d 537 (2d Cir.1993); *Paper Corp. of the United States v. Schoeller Technical Papers, Inc.,* 807 F.Supp. 337, 350 (S.D.N.Y. 1992). An award is excessive when it " 'is so high as to shock the judicial conscience and constitute a denial of justice.' " *O'Neill v. Krzeminski,* 839 F.2d 9, 13 (2d Cir.1988) (quoting *Zarcone v. Perry,* 572 F.2d 52, 56 (2d Cir.1978)); *see also Paturzo v. Metro–North Commuter Railroad,* 751 F.Supp. 1086, 1087 (S.D.N.Y.1990).

The only amounts the Court considers at issue are those awarded by the jury for past pain and suffering, $75,000, and for future

pain and suffering, $60,000. Since the parties stipulated to $25,000 as the amount due to D'Amato for lost earnings, that portion of the award is not contested. Further, the Court finds the jury's award of $800 for D'Amato's past out-of-pocket expenses to be eminently reasonable after D'Amato's approximately three and a half years of treatment.

After evaluating the evidence presented at trial, the Court concludes that the jury's verdict was rationally related to the evidence and reasonable in light of plaintiff's surgeries and the jury's finding of permanency. It is undisputed that, in the two and a half years following his accident, D'Amato underwent two surgeries, one on his elbow, and the other on his wrist. Further, from the time of his accident until the time of trial, he endured repeated examinations, diagnostic tests, and physical therapy sessions. Both D'Amato and his wife testified that, as a result of his injuries and continued pain, D'Amato is not the active and athletic man he once was. He suffers from depression and his everyday activities are restricted. For example, D'Amato no longer easily performs household chores, he does not engage in the outdoor activities he enjoyed before his accident, such as biking and fishing, and he cannot sit for an extended period.

 In evaluating the damages awarded in a particular action, courts properly may look to awards in other cases to plaintiffs with similar injuries " 'as a point of reference by which to gauge the appropriateness of the award.' " *Slade,* 811 F.Supp. at 75 (quotation from *Matthews v. CRI Container Transport Int'l, Inc.,* 871 F.2d 270, 278 (2d Cir. 1989), not found). The Railroad cites cases in which plaintiffs were awarded lesser amounts for injuries which defendant argues are comparable to those in this case. In order to prevail, however, the Railroad must do more than simply establish that some plaintiffs with similar injuries were awarded smaller verdicts, it must show that the jury's verdict in this case is *clearly* outside the maximum limit of a reasonable range." *Schoeller Technical Papers,* 807 F.Supp. at 350 (emphasis in original); *Reinertsen v. George W. Rogers Constr. Corp.,* 519 F.2d

531, 532 (2d Cir.1975). Further, the Court bears in mind that " '[t]he power to set aside [a jury's verdict] should be cautiously used because where pain and suffering and permanent injury are involved there can be no exact yardstick and the jury's determination should stand unless it is clearly unreasonable.' " *Akermanis v. Sea–Land Serv., Inc.,* 521 F.Supp. 44, 51–52 (S.D.N.Y.1981) (quoting *Lopoczyk v. Chester A. Poling, Inc.,* 60 F.Supp. 839, 840 (S.D.N.Y.), *aff'd,* 152 F.2d 457 (2d Cir.1945)). The Railroad has not met this burden.

The Court's initial conclusion is supported by a review of cases involving injuries similar to those suffered by D'Amato, confirming that the verdict in this case was well within the range found by other courts to be appropriate. The following cases involving ulnar nerve injuries illustrate parameters drawn by courts. In *Paturzo v. Metro–North Commuter R.R., supra,* the court ordered a new trial on damages, concluding that a $650,000 verdict was excessive where plaintiff's primary injury was ulnar nerve neuropathy which caused numbness in two fingers and the web of the thumb in the plaintiff's nondominant hand. In *Smith v. Saviolis,* 136 A.D.2d 621, 523 N.Y.S.2d 868 (2d Dep't 1988), the court ruled that a jury verdict of $93,500 to a plaintiff who suffered from ulnar sensory nerve entrapment in her wrist resulting from an automobile accident was not excessive as a matter of law.

Two cases involving carpal tunnel syndrome also are instructive. In *Schare v. Welsbach Electric Corp.,* 138 A.D.2d 477, 526 N.Y.S.2d 25 (2d Dep't 1988), the Appellate Division reversed the trial court's order, holding that it inappropriately exercised its discretion in setting aside a jury verdict of $65,000 and entering a judgment of $125,000 based on plaintiff's carpal tunnel syndrome. In *Silverstein v. Harmonie Club of the City of New York,* 173 A.D.2d 378, 569 N.Y.S.2d 965 (1st Dep't 1991), a $100,000 verdict was held adequate where plaintiff's primary injury was carpal tunnel syndrome.

Finally, illustrative of cases in which courts have evaluated pain and suffering damages to plaintiffs with back injuries are the following cases. In *Gumbs v. Pueblo Int'l, Inc.,*

823 F.2d 768 (3d Cir.1987), where the plaintiff injured her back while shopping, the court held that the verdict reduced by the trial court from $900,000 to $575,000 remained excessive and ordered a new trial on damages or, in the alternative, required plaintiff to accept remittitur in the amount of $235,000. Like D'Amato, Gumbs had difficulty with household chores and was unable to enjoy activities as she had before her accident. However, unlike the plaintiff in this case, Gumbs did not miss even a day of work as a result of her accident. In *Williams v. Martin Marietta Alumina, Inc.,* 817 F.2d 1030 (3d Cir.1987), involving a back injury with limited clinical evidence of injury, the court ordered a new trial on damages, holding that an award of $600,000 was excessive where, of the total award, $317,000 was attributable to damages for pain and suffering. In lieu of facing a new trial, the court determined that plaintiff could choose to accept a reduced damages award for pain and suffering in the amount of $100,000.

The Jury Verdict Research Series reports that verdicts awarded throughout the nation in cases involving ulnar nerve injuries ranged from a low of $1,000 to a maximum award of $4,927,975, with a verdict median of $90,000. *Personal Injury Valuation Handbooks* (*"Valuation Handbooks"*), Vol. 3, Release No. 3.12.0, p. 9 (1993). For carpal tunnel syndrome, verdicts ranged from $477 to $324,000, with a verdict median of $30,000. *Valuation Handbooks,* Vol. 3, Release No. 3.10.0, p. 12 (1993). Finally, for bulging or protruding disc injuries, verdicts from across the country ranged from a low of $283 to a high of $3,000,000, and the median verdict was $46,300. *Valuation Handbooks,* Vol. 1, Release No. 1.90.0, p. 8 (1994).

■ Finally, as the Court has concluded that the jury's verdict was not excessive, the Railroad's request for remittitur also is denied. *Slade,* 811 F.Supp. at 76–77 (standard for new trial and remittitur the same).

Plaintiff asks for the costs of defending this motion. Unlike some federal statutes, however, the Federal Employers' Liability Act ("FELA") does not authorize recovery of attorneys' fees. 45 U.S.C. § 51 *et seq.* "Only if the Congress were to provide for

such recovery would it be proper to consider them." *Norfolk & W. Ry. Co. v. Liepelt,* 444 U.S. 490, 495, 100 S.Ct. 755, 758, 62 L.Ed.2d 689 (1980) (FELA action). Therefore, plaintiff's request is denied.

### CONCLUSION

For the reasons set forth above, the defendant's motion for a new trial or, in the alternative, remittitur, is hereby DENIED. Plaintiff's request for attorneys' fees also is DENIED.

SO ORDERED.